# LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY *v.* SMITH.

## ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 227. Argued March 14, 15, 1899. — Decided April 17, 1899.

The provision in the act of the legislature of Michigan, No. 90, of the year 1891, amending the general railroad law, that one thousand-mile tickets shall be kept for sale at the principal ticket offices of all railroad companies in this State or carrying on business partly within and partly without the limits of the State, at a price not exceeding twenty dollars in the Lower-Peninsula and twenty-five dollars in the Upper Peninsula; that such one thousand-mile tickets may be made non-transferable, but whenever required by the purchaser they shall be issued in the names of the purchaser, his wife and children, designating the name of each on such ticket, and in case such ticket is presented by any other than the person or persons named thereon, the conductor may take it up and collect fare, and thereupon such one thousand-mile ticket shall be forfeited to the railroad company; that each one thousand-mile ticket shall be valid for two years only after date of purchase, and in case it is not wholly used within the time, the company issuing the same shall redeem the unused portion thereof, if presented by the purchaser for redemption within thirty days after the expiration of such time, and shall on such redemption be entitled to charge three cents per mile for the portion thereof used, is a violation of that part of the Constitution of the United States which forbids the taking of property without due process of law, and requires the equal protection of the laws.

In so holding the court is not thereby interfering with the power of the legislature over railroads, as corporations or common carriers, to so legislate as to fix maximum rates, to prevent extortion or undue charges, and to promote the safety, health, convenience or proper protection of the public; but it only says that the particular legislation in review in this

case does not partake of the character of legislation fairly or reasonably necessary to attain any of those objects, and that it does violate the Federal Constitution as above stated.

MAY 21, 1891, by act No. 90 of that year, the general railroad law of the State of Michigan was amended by the legislature, a portion of the ninth section of which amendment reads as follows:

". . . *Provided, further*, That one thousand-mile tickets shall be kept for sale at the principal ticket offices of all railroad companies in this State or carrying on business partly within and partly without the limits of the State, at a price not exceeding twenty dollars in the Lower Peninsula and twenty-five dollars in the Upper Peninsula. Such one thousand-mile tickets may be made non-transferable, but whenever required by the purchaser they shall be issued in the names of the purchaser, his wife and children, designating the name of each on such ticket, and in case such ticket is presented by any other than the person or persons named thereon, the conductor may take it up and collect fare, and thereupon such one thousand-mile ticket shall be forfeited to the railroad company. Each one thousand-mile ticket shall be valid for two years only after date of purchase, and in case it is not wholly used within the time, the company issuing the same shall redeem the unused portion thereof, if presented by the purchaser for redemption within thirty days after the expiration of such time, and shall on such redemption be entitled to charge three cents per mile for the portion thereof used."

On April 19, 1893, and again on October 17, 1893, the defendant in error demanded of the ticket agent of the plaintiff in error, in the city of Adrian, Michigan, a thousand-mile ticket, pursuant to the provisions of the above section, in the names of himself and his wife Emma Watts Smith, which demand was refused. The defendant in error then applied for a mandamus to the circuit court to compel the railway company to issue such ticket upon the payment of the amount of $20, and after a hearing the motion was granted. Upon certiorari the Supreme Court of Michigan affirmed that order

and held that the statute applied only to the railway lines of the plaintiff in error operated within the State of Michigan.

The defence set up by the railway company was that under the charter from the State to one of the predecessors of the company to whose rights it had succeeded, it had the right to charge three cents a mile for the transportation of all passengers, and that such charter constituted a contract between the State and the company, which the former had no right to impair by any legislative action, and that the statute compelling the company to sell thousand-mile tickets at the rate of two cents a mile was an impairment of the contract, and was therefore void as in violation of the Constitution of the United States. It also alleged that the act was in violation of the Fourteenth Amendment of the Constitution of the United States, in that it deprived the company of its property and liberty of contract without due process of law, and also deprived it of the equal protection of the laws. The act was also alleged to be in violation of the constitution of the State of Michigan on several grounds.

The Supreme Court of the State decided that there was no contract in relation to the rates which the company might charge for the transportation of passengers, and that the statute violated no provision either of the Federal or the state constitution, but was a valid enactment of the legislature, and therefore the court affirmed the order for mandamus, the ticket to be good upon and limited to the railway lines of the defendant railroad company within the State of Michigan. 72 N. W. Rep. 328. The company sued out a writ of error from this court.

*Mr. George C. Greene* for plaintiff in error.

*Mr. Fred A. Maynard* and *Mr. Henry C. Smith* for the defendant in error.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

The only subject of inquiry for us in this case is whether the act of the legislature of the State of Michigan violates any provision of the Federal Constitution. It is not within our province to review the decision of the Supreme Court upon the question whether the act violates the constitution of the State.

The two questions of a Federal nature that are raised in the record are, (1) whether the act violates the Constitution of the United States by impairing the obligation of any contract between the State and the railroad company; and (2) if not, does it nevertheless violate the Fourteenth Amendment of the Constitution by depriving the company of its property or liberty without due process of law or by depriving it of the equal protection of the laws. If we should decide that this act violates any provision of the Fourteenth Amendment it would be unnecessary to examine the question whether there was any contract between the State and the company as claimed by it. We will therefore first come to an investigation of the legislative authority with reference to that Amendment.

If unhampered by contract there is no doubt of the power of the State to provide by legislation for maximum rates of charges for railroad companies, subject to the condition that they must be such as will admit of the carrier earning a compensation that under all the circumstances shall be just to it and to the public, and whether they are or not is a judicial question. If the rates are fixed at an insufficient amount within the meaning of that term as given by the courts, the law would be invalid, as amounting to the taking of the property of the company without due process of law. *Chicago & Grand Trunk Railway Company* v. *Wellman*, 143 U. S. 339, 344; *Reagan* v. *Farmers' Loan & Trust Company*, 154 U. S. 362, 399; *St. Louis & San Francisco Railway Co.* v. *Gill*, 156 U. S. 649; *Smyth* v. *Ames*, 169 U. S. 466, 523.

The extent of the power of the State to legislate regarding the affairs of railroad companies has within the past few years been several times before this court. *Wabash, St. Louis & Pacific Railway Co.* v. *Illinois*, 118 U. S. 557; *Illinois Central*

*Railroad* v. *Illinois*, 163 U. S. 142; *Lake Shore & Michigan Southern Railway* v. *Ohio*, 173 U. S. 285, and cases cited. These cases arose under the commerce clause of the Federal Constitution, the inquiry being whether the legislation in question violated that provision. In the cases in which the legislation was upheld it was on the ground that the State was but exercising its proper authority under its general power to legislate regarding persons and things within its jurisdiction, sometimes described as its police power, and that in exercising that power in the particular cases it did not violate the commerce clause of the Federal Constitution by improperly regulating or interfering with interstate commerce. The extent of the right of the State to legislate was examined in these various cases — so far at least as it was affected by the commerce clause of the Constitution of the United States.

In *Illinois Central Railroad* v. *Illinois*, the state statute imposed the duty upon the company of stopping its fast mail train at the station at Cairo, to do which the train had to leave the through route at a point three miles from that station and then return to the same point in order to resume its journey. This statute was held to be an unconstitutional interference with interstate commerce, and therefore void.

In *Lake Shore & Michigan Southern Railway* v. *Ohio*, a statute of the State of Ohio required the company to stop certain of its trains at stations containing 3000 inhabitants for a time sufficient to receive and let off passengers, and the statute was held to be a valid exercise of legislative power and not an improper interference with interstate commerce. In the course of the opinion of the court, which was delivered by Mr. Justice Harlan, it was said that "the power, whether called police, governmental or legislative, exists in each State, by appropriate enactments not forbidden by its own constitution or by the Constitution of the United States, to regulate the relative rights and duties of all persons and corporations within its jurisdiction, and therefore to provide for the public convenience and the public good. This power in the States is entirely distinct from any power granted to the General Government, although when exercised it may sometimes

reach subjects over which national legislation can be constitutionally extended." And again, speaking of cases involving state regulations more or less affecting interstate or foreign commerce, it was said that these cases " were sustained upon the ground that they were not directed against nor were direct burdens upon interstate or foreign commerce; and having been enacted only to protect the public safety, the public health or the public morals, and having a real, substantial relation to the public ends intended to be accomplished thereby, were not to be deemed absolutely forbidden because of the mere grant of power to Congress to regulate interstate and foreign commerce, but to be regarded as only incidentally affecting such commerce and valid until superseded by legislation of Congress on the same subject."

The police power is a general term used to express the particular right of a government which is inherent in every sovereignty. As stated by Mr. Chief Justice Taney, in the course of his opinion in the *License cases*, 5 How. 504, 583, in describing the powers of a State : " they are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions. And whether a State passes a quarantine law, or a law to punish offences, or to establish courts of justice, or requiring certain instruments to be recorded, or to regulate commerce within its own limits, in every case it exercises the same power; that is to say, the power of sovereignty, the power to govern men and things within the limits of its dominion."

This power must, however, be exercised in subordination to the provisions of the Federal Constitution. If, in the assumed exercise of its police power, the legislature of a State directly and plainly violates a provision of the Constitution of the United States, such legislation would be void.

The validity of this act is rested by the counsel for the defendant in error upon the proposition that the state legislature has the power of regulation over the corporation created by it, and in cases of railroad corporations, the same power of regulation and also full control over the subject of rates to be charged by them as carriers for the transportation of persons

and property. Assuming that the State is not controlled by contract between itself and the railroad company, the question is how far does the authority of the legislature extend in a case where it has the power of regulation, and also the right to amend, alter or repeal the charter of a company, together with a general power to legislate upon the subject of rates and charges of all carriers. It has no right even under such circumstances to take away or destroy the property or annul the contracts of a railroad company with third persons. *Greenwood* v. *Freight Company,* 105 U. S. 13, 17; *Commonwealth* v. *Essex County,* 13 Gray, 239, *People* v. *O'Brien,* 111 N. Y. 1, 52; *Detroit* v. *Detroit & Howland Plankroad,* 43 Michigan, 140.

A railroad company, although a *quasi* public corporation, and although it operates a public highway, *Cherokee Nation* v. *Southern Kansas Railway,* 135 U. S. 641; *Lake Shore &c. Railway* v. *Ohio,* 173 U. S. 285, 301, has nevertheless rights which the legislature cannot take away without a violation of the Federal Constitution, as stated in *Smyth* v. *Ames,* 169 U. S. 466, 544. A corporation is a person within the protection of the Fourteenth Amendment. *Minneapolis & St. Louis Railway* v. *Beckwith,* 129 U. S. 26; *Smyth* v. *Ames,* 169 U. S. 466, 522, 526. Although it is under governmental control, that control must be exercised with due regard to constitutional guarantees for the protection of its property.

The question is presented in this case whether the legislature of a State, having power to fix maximum rates and charges for the transportation of persons and property by railroad companies, with the limitations above stated, and having power to alter, amend or repeal their charters, within certain limitations, has also the right, after having fixed a maximum rate for the transportation of passengers, to still further regulate their affairs and to discriminate and make an exception in favor of certain persons, and give to them a right of transportation for a less sum than the general rate provided by law.

It is said that the power to create this exception is included in the greater power to fix rates generally; that having the right to establish maximum rates, it therefore has power to

lower those rates in certain cases and in favor of certain individuals, while maintaining them or permitting them to be maintained at a higher rate in all other cases. It is asserted also that this is only a proper and reasonable regulation.

It does not seem to us that this claim is well founded. We cannot regard this exceptional legislation as the exercise of a lesser right which is included in the greater one to fix by statute maximum rates for railroad companies. The latter is a power to make a general rule applicable in all cases and without discrimination in favor of or against any individual. It is the power to declare a general law upon the subject of rates beyond which the company cannot go, but within which it is at liberty to conduct its work in such a manner as may seem to it best suited for its prosperity and success. This is a very different power from that exercised in the passage of this statute. The act is not a general law upon the subject of rates, establishing maximum rates which the company can in no case violate. The legislature having established such maximum as a general law now assumes to interfere with the management of the company while conducting its affairs pursuant to and obeying the statute regulating rates and charges, and notwithstanding such rates it assumes to provide for a discrimination, an exception in favor of those who may desire and are able to purchase tickets at what might be called wholesale rates — a discrimination which operates in favor of the wholesale buyer, leaving the others subject to the general rule. And it assumes to regulate the time in which the tickets purchased shall be valid and to lengthen it to double the period the railroad company has ever before provided. It thus invades the general right of a company to conduct and manage its own affairs, and compels it to give the use of its property for less than the general rate to those who come within the provisions of the statute, and to that extent it would seem that the statute takes the property of the company without due process of law. We speak of the general right of the company to conduct and manage its own affairs; but at the same time it is to be understood that the company is subject to the unquestioned jurisdiction of the legislature in the exercise of its power to

provide for the safety, the health and the convenience of the public, and to prevent improper exactions or extortionate charges from being made by the company.

It is stated upon the part of the defendant in error that the act is a mere regulation of the public business, which the legislature has a right to regulate, and its apparent object is to promote the convenience of persons having occasion to travel on railroads and to reduce for them the cost of transportation; that its benefit to the public who are compelled to patronize railroads is unquestioned; that it brings the reduction of rates of two cents per mile within the reach of all persons who may have occasion to make only infrequent trips; and that there is no reason why the legislature may not fix the period of time within which the holder of the ticket shall be compelled to use it. The reduction of rates in favor of those purchasing this kind of ticket is thus justified by the reasons stated.

The right to claim from the company transportation at reduced rates by purchasing a certain amount of tickets is classed as a convenience. As so defined it would be more convenient if the right could be claimed without any compensation whatever. But such a right is not a convenience at all within the meaning of the term as used in relation to the subject of furnishing conveniences to the public. And also the convenience which the legislature is to protect is not the convenience of a small portion only of the persons who may travel on the road, while refusing such alleged convenience to all others, nor is the right to obtain tickets for less than the general and otherwise lawful rate to be properly described as a convenience. If that were true, the granting of the right to some portion of the public to ride free on all trains and at all times might be so described. What is covered by the word "convenience," it might be difficult to define for all cases, but we think it does not cover this case. An opportunity to purchase a thousand-mile ticket for less than the standard rate we think is improperly described as a convenience.

The power of the legislature to enact general laws regard-

ing a company and its affairs does not include the power to compel it to make an exception in favor of some particular class in the community and to carry the members of that class at a less sum than it has the right to charge for those who are not fortunate enough to be members thereof. This is not reasonable. regulation. We do not deny the right of the legislature to make all proper rules and regulations for the general conduct of the affairs of the company, relating to the running of trains, the keeping of ticket offices open and providing for the proper accommodation of the public.

This act is not like one establishing certain hours in the day during which trains shall be run for a less charge than during the other hours. In such case it is the establishing of maximum rates of fare for the whole public during those hours, and it is not a discrimination in favor of certain persons by which they can obtain lower rates by purchasing a certain number of tickets by reason of which the company is compelled to carry them at the reduced rate, and thus, in substance, to part with its property at a less sum than it would be otherwise entitled to charge. The power to compel the company to carry persons under the circumstances as provided for in this act, for less than the usual rates, does not seem to be based upon any reason which has hitherto been regarded as sufficient to authorize an interference with the corporation, although a common carrier and a railroad.

The act also compels the company to carry not only those who choose to purchase these tickets, but their wives and children, and it makes the tickets good for two years from the time of the purchase. If the legislature can, under the guise of regulation, provide that these tickets shall be good for two years, why can it not provide that they shall be good for five or ten or even a longer term of years? It may be said that the regulation must provide for a reasonable term. But what is reasonable under these circumstances? Upon what basis is the reasonable character of the period to be judged? If two years would and five years would not be reasonable, why not? And if five years would be reasonable, why would not ten? If the power exist at all, what are the

factors which make it unreasonable to say that the tickets shall
be valid for five or for ten years? It may be said that cir-
cumstances can change within that time. That is true, but
circumstances may change within two just as well as within
five or ten years. There is no particular time in regard to
which it may be said in advance and as a legal conclusion
that circumstances will not change. And can the validity of
the regulation be made to depend upon what may happen in
the future, during the running of the time in which the legisla-
ture has decreed the company shall carry the purchaser of the
ticket? Regulations for maximum rates for present transpor-
tation of persons or property bear no resemblance to those
which assume to provide for the purchase of tickets in quanti-
ties at a lower than the general rate, and to provide that they
shall be good for years to come. This is not fixing maximum
rates, nor is it proper regulation. It is an illegal and unjusti-
fiable interference with the rights of the company.

If this power exist it must include the right of the legisla-
ture, after establishing maximum freight rates, to also direct
the company to charge less for carrying freight where the
party offering it sends a certain amount, and to carry it at
that rate for the next two or five or ten years. Is that an exer-
cise of the power to establish maximum freight rates? Is it a
valid exercise of the power to regulate the affairs of a corpora-
tion? The legislature would thus permit not only discrimina-
tion in favor of the larger freighter as against the smaller one,
but it would compel it. If the general power exist, then the
legislature can direct the company to charge smaller rates for
clergymen or doctors, for lawyers or farmers or school teach-
ers, for excursions, for church conventions, political conven-
tions, or for all or any of the various bodies that might desire
to ride at any particular time or to any particular place.

If the legislature can interfere by directing the sale of
tickets at less than the generally established rate, it can
compel the company to carry certain persons or classes free.
If the maximum rates are too high in the judgment of the
legislature, it may lower them, provided they do not make
them unreasonably low as that term is understood in the law;

but it cannot enact a law making maximum rates, and then proceed to make exceptions to it in favor of such persons or classes as in the legislative judgment or caprice may seem proper. What right has the legislature to take from the company the compensation it would otherwise receive for the use of its property in transporting an individual or classes of persons over its road, and compel it to transport them free or for a less sum than is provided for by the general law? Does not such an act, if enforced, take the property of the company without due process of law? We are convinced that the legislature cannot thus interfere with the conduct of the affairs of corporations.

But it may be said that as the legislature would have the power to reduce the maximum charges for all, to the same rate at which it provides for the purchase of the thousand-mile ticket, the company cannot be harmed or its property taken without due process of law when the legislature only reduces the rates in favor of a few instead of in favor of all. It does not appear that the legislature would have any right to make such an alteration. To do so might involve a reduction of rates to a point insufficient for the earning of the amount of remuneration to which a company is legally entitled under the decisions of this court. In that case reduction would be illegal. For the purpose of upholding this discriminatory legislation we are not to assume that the exercise of the power of the legislature to make in this instance a reduction of rates as to all would be legal, and therefore a partial reduction must be also legal. *Prima facie,* the maximum rates as fixed by the legislature are reasonable. This of course applies to rates actually fixed by that body.

There is no presumption, however, that certain named rates which it is said the legislature might fix but which it has not, would, in case it did so fix them, be reasonable and valid. That it has not so fixed them affords a presumption that they would be invalid, and that presumption would remain until the legislature actually enacted the reduction. At any rate, there is no foundation for a presumption of validity in case it did so enact, in order to base the argument that a partial

reduction, by means of this discrimination, is therefore also valid. And this argument also loses sight of the distinction we made above between the two cases of a general establishment of maximum rates and the enactment of discriminatory, exceptional and partial legislation upon the subject of the sale of tickets to individuals willing and able to purchase a quantity at any one time. The latter is not an exercise of the power to establish maximum rates.

True it is that the railroad company exercises a public franchise and that its occupation is of a public nature, and the public therefore has a certain interest in and rights connected with the property, as was held in *Munn.* v. *Illinois*, 94 U. S. 113, 125, and the other kindred cases. The legislature has the power to secure to the public the services of the corporation for reasonable compensation, so that the public shall be exempted from unreasonable exactions, and it has also the authority to pass such laws as shall tend to secure the safety, convenience, comfort and health of its patrons and of the public with regard to the railroad. But in all this we find it neither necessary nor appropriate, in order that the legislature may exercise its full right over these corporations, to make such a regulation as this, which discriminates against it and in favor of certain individuals, without any reasonable basis therefor, and which is not the fixing of maximum rates or the exercise of any such power.

The legislature having fixed a maximum rate at what must be presumed, *prima facie*, to be also a reasonable rate, we think the company then has the right to insist that all persons shall be compelled to pay alike, that no discrimination against it in favor of certain classes of married men or families, excursionists or others, shall be made by the legislature. If otherwise, then the company is compelled at the caprice or whim of the legislature to make such exceptions as it may think proper and to carry the excepted persons at less than the usual and legal rates, and thus to part in their favor with its property without that compensation to which it is entitled from all others, and therefore to part with its property without due process of law. The affairs of the company are

in this way taken out of its own management, not by any general law applicable to all, but by a discrimination made by law to which the company is made subject. Whether an act of this nature shall be passed or not, is not a matter of policy to be decided by the legislature. It is a matter of right of the company to carry on and manage its concerns subject to the general law applicable to all, which the legislature may enact in the legal exercise of its power to legislate in regard to persons and things within its jurisdiction.

This case differs from that which has just been decided, *Lake Shore &c. Company* v. *Ohio,* 173 U. S. 285. In that case the convenience of the public in the State was the basis of the decision, regard being also had to the convenience of the public outside of and beyond the State. It included all the public who desired to ride from the stations provided for in the act, and the convenience to the people in taking a train at these stations was held by this court to be so substantial as to justify the enactment in question.

But in this case it is not a question of convenience at all within the proper meaning of that term. Aside from the rate at which the ticket may be purchased, the convenience of purchasing this kind of a ticket is so small that the right to enact the law cannot be founded upon it. It is no answer to the objection to this legislation to say that the company has voluntarily sold thousand-mile tickets good for a year from the time of their sale. What the company may choose voluntarily to do furnishes no criterion for the measurement of the power of a legislature. Persons may voluntarily contract to do what no legislature would have the right to compel them to do. Nor does it furnish a standard by which to measure the reasonableness of the matter exacted by the legislature. The action of the company upon its own volition, purely as a matter of internal administration, and in regard to the details of its business which it has the right to change at any moment, furnishes no argument for the existence of a power in a legislature to pass a statute in relation to the same business imposing additional burdens upon the company.

To say that the legislature has power to absolutely repeal

the charter of the company and thus to terminate its legal existence does not answer the objection that this particular exercise of legislative power is neither necessary nor appropriate to carry into execution any valid power of the State over the conduct of the business of its creature. To terminate the charter and thus end the legal life of the company does not take away its property, but, on the contrary, leaves it all to the shareholders of the company after the payment of its debts.

In *Attorney General* v. *Old Colony Railroad*, 160 Mass. 62, the statute required every railroad corporation in the Commonwealth to have on sale certain tickets which should be received for fare on all railroad lines in the Commonwealth, etc., and the statute was held invalid. The precise question involved in this case was not there presented, and the court said it was not necessary or practicable to attempt to determine in that case just how far the legislature could go by way of regulating the business of railroad companies or just where were the limits of its power.

The power to enact legislation of this character cannot be founded upon the mere fact that the thing affected is a corporation, even when the legislature has power to alter, amend or repeal the charter thereof. The power to alter or amend does not extend to the taking of the property of the corporation either by confiscation or indirectly by other means. The authority to legislate in regard to rates comes from the power to prevent extortion or unreasonable charges or exactions by common carriers or others exercising a calling and using their property in a manner in which the public have an interest.

In this case there is not an exercise of the power to fix maximum rates. There is not the exercise of the acknowledged power to legislate so as to prevent extortion or unreasonable or illegal exactions. The fixing of the maximum rate does that. It is a pure, bald and unmixed power of discrimination in favor of a few of the persons having occasion to travel on the road and permitting them to do so at a less expense than others, provided they buy a certain number of tickets at one time. It is not legislation for the

safety, health or proper convenience of the public, but an arbitrary enactment in favor of the persons spoken of, who in the legislative judgment should be carried at a less expense than the other members of the community. There is no reasonable ground upon which the legislation can be rested unless the simple decision of the legislature should be held to constitute such reason. Whether the legislature might not in the fair exercise of its power of regulation provide that ordinary tickets purchased from the company should be good for a certain reasonable time, is not a question which is now before us, and we need not express any opinion in regard to it.

In holding this legislation a violation of that part of the Constitution of the United States which forbids the taking of property without due process of law, and requires the equal protection of the laws, we are not, as we have stated, thereby interfering with the power of the legislature over railroads as corporations or common carriers, to so legislate as to fix maximum rates, to prevent extortion or undue charges, and to promote the safety, health, convenience or proper protection of the public. We say this particular piece of legislation does not partake of the character of legislation fairly or reasonably necessary to attain any of those objects, and that it does violate the Federal Constitution as above stated.

*The judgment of the Supreme Court of the State of Michigan should be reversed and the case remanded for further proceedings not inconsistent with the opinion of this court, and it is so ordered.*

The CHIEF JUSTICE and MR. JUSTICE GRAY and MR. JUSTICE McKENNA dissented.