THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. I. P. CAMPBELL.

No. 11442.* (59 Pac. 1051.)

RAILROADS — *Transportation to Shippers — Unconstitutional Law.* Chapter 167, Laws of 1897 (Gen. Stat. 1897, ch. 70, §§ 67–69; Gen. Stat. 1899, §§ 5763–5765), being "An act to require railroad companies to furnish free transportation to shippers of stock in certain cases," etc., is a deprivation of property without due process of law, and a denial of the equal protection of the laws, and is therefore unconstitutional and void under the fourteenth amendment to the federal constitution.

Error from court of appeals, southern department; A. W. DENNISON, B. F. MILTON, and M. SCHOONOVER, judges. Opinion filed February 10, 1900. Reversed.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*Sankey & Campbell,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought by the defendant in error, as plaintiff, against the plaintiff

---

*For opinion by court of appeals, see 8 Kan. App. 661, 56 Pac. 509.—REP.

in error, as defendant, to recover an amount of money paid as passenger fare on the line of the road of plaintiff in error from Kansas City, Kan., to Attica, Kan. The defendant in error shipped a car-load of live stock from the latter place to the former. On the going trip he rode free on a stock-shipper's contract issued to him by the railroad company's agent at the shipping point. On the return trip he demanded to be carried free, in accordance with the provisions of chapter 167, Laws of 1897. (Gen. Stat. ch. 70, §§ 67–79 ; Gen. Stat. 1899, §§ 5763–5765.) This demand was refused, and to avoid ejection from the train he paid the required fare. He then brought an action to recover the amount paid, together with an attorney's fee for the prosecution of the suit. Judgment was rendered in his favor, first by a justice of the peace, next by the district court, and lastly by the court of appeals. (*Railway Co. v. Campbell*, 8 Kan. App. 661, 56 Pac. 509.) The railway company has prosecuted error to this court.

The sole question involved in the case is the constitutionality of the legislative enactment under which the demand for free transportation was made. The title of the act and its first two sections, the only ones material to quote, read as follows :

"AN ACT to amend chapter 195, of the Laws of 1895, being an act entitled 'An act to require railroad companies to furnish free transportation to shippers of stock in certain cases, and providing a remedy in case of failure or refusal on the part of the railroad company to comply with the provisions of this act.' To provide a penalty for the violations of the provisions of this act, and repealing all acts and parts of acts in conflict herewith."

" SECTION 1. That section 1 of chapter 195, of the Laws of 1895, be amended so as to read as follows : SECTION 1. Whenever any railroad company, or corporation, doing business within the limits of this state shall receive and ship any live stock by the car-load, said company, in consideration of the usual price paid

for the shipment of said car, shall pass the shipper or his employee to and from the point designated in the contract or bill of lading, without further expense to the shipper in the way of fare : *Provided, however*, that in all cases where a shipper ships more than one car-load of stock at the same time the said railroad company shall be and is hereby required to pass free, as aforesaid, only one additional person, shipper, or employee, for every three car-loads shipped in addition to the first car-load.

" SEC. 2. That section 2 of said chapter 195, Laws of 1895, is hereby amended so as to read : SEC. 2. Every railroad company, or corporation failing or refusing to comply with the provisions of section 1, of this act, shall be liable in damages to the shipper, for the amount of damages sustained by reason of such failure or refusal on the part of the railroad company, to be recovered before any court of competent jurisdiction, and any judgment recovered on any such action shall be made to cover reasonable attorney's fees for plaintiff's attorney."

The above act is assailed upon the ground of its repugnancy to that portion of the fourteenth amendment to the constitution of the United States which reads : " Nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Speaking for myself, I am of the opinion that a strained and artificial construction has been often placed upon this constitutional provision, especially by the federal courts, for the purpose of bringing within its prohibitive terms much wholesome state legislation. For instance, I do not believe that the word " person " used in the clause above quoted was designed to include corporations, nor that it can in reason bear that signification when read in connection with the preceding clauses of the section and interpreted in the historic light of the

origin and purpose of the amendment. However, the federal courts, the authoritative expositors of the federal constitution, departing from the view first taken by them, have been for many years holding that a corporation was a "person" within the meaning of the provision above quoted. Those decisions are, of course, binding upon the state courts. Being, therefore, under the compulsion of the now-settled rule of interpretation, I agree with my associates that the above-quoted enactment cannot be upheld. It operates as a deprivation of property without due process of law, and is a denial of the equal protection of the laws.

The property of a railroad company consists not alone in its franchise to be a corporation, nor its right of way and track, nor its rolling-stock and other tangible property, but it consists, in its most essential character and important sense, in the right to charge and collect tolls for the transportation of persons and property over its line. Without the right to take tolls such corporation could not do business, and a denial of its right to take tolls would as effectually render valueless all of its other property as a confiscation of its other property would defeat its ability to carry on its business. Upon the conception of the right to take tolls as a species of property belonging to railroad corporations rest all the decisions of all the courts, both state and federal, denying the right of state legislatures to restrict such tolls below a reasonable amount. It needs but a glance at the act in question, and but a moment's thought over the consequences to result from a sanction of its provisions, to perceive that it strikes vitally at the fundamental right of a railroad company to own and enjoy that species of property which exists in the form of its franchise to charge and

collect tolls.   It purports in its title to be and is "An
act to require railroad companies to furnish free trans-
portation to shippers of stock in certain cases"; and
in its body it requires railroad companies, "in consid-
eration of the usual price paid for the shipment of a
car of stock, to pass the shipper or his employee to
and from the point designated in the contract or bill
of lading, without further expense to the shipper in
the way of fare."

Upon no theory whatever, consistent with the idea
that the franchise of railroad companies to take tolls
is a species of property, or consistent with the adju-
dications of the courts that such right of property is
protected by the fourteenth amendment to the federal
constitution, can such an enactment be upheld.   Once
grant that so much of the property of railroad com-
panies as is involved in their right to charge passen-
ger fare to shippers of stock can be taken away by
legislative enactment, and it necessarily follows that
the like property of theirs which consists in their
right to charge passenger fare to other shippers of
other kinds of property can also be taken away for like
reasons ; and once grant, upon like considerations, that
the property right of railroad companies to take tolls
for passenger carriage can be thus taken away, and
the right to take tolls for freight transportation can
be likewise taken away ; and once grant that the right
to take tolls for freight and passenger carriage can be
taken away, and it follows that the right to own and
possess the rolling-stock and other like property nec-
essary to the operation of the road can be likewise
taken away ; in short, there would be no end to the
extension of legislative authority over the right of
railroad companies to own and enjoy property.   It
would be no answer to say that the enforcement of the

act in question would not sufficiently impair the property right of the companies to take tolls as to be substantially detrimental to their interests. Rights are not measured or ascertained by the extent of the injury resulting from their impairment or denial. They do not cease to exist merely because the hurt to them may be slight. Rights reside in principles and not in the physical ability of the claimant of rights to do without a minor portion of them.

Again, speaking for myself, I am a firm believer in the right of the legislature of this state, under the reserved power of the constitution (art. 12, § 1), to amend or add to the original acts providing for the incorporation of companies, and to amend or add to the original body of laws governing them, without declaring its enactments to be amendatory in character. However, its power of amendment in such cases is limited to such enactments as do not substantially impair the vested rights of the corporation. (7 A. & E. Encycl. of L., 2d ed., 675.) I therefore agree with my associates that the act in question, even if it be regarded as an exercise of the reserved power of the legislature to amend the charter of railroad corporations, is a substantial impairment of their vested rights.

We do not mean to say that the legislature is powerless to declare circumstances or prescribe conditions under which railroad companies may be required to furnish transportation to shippers of live stock or other merchandise over their lines. However, those circumstances or conditions, if declared or prescribed, must exist in the form of considerations or equivalents for the transportation furnished. It may be that railroad companies can be compelled to carry patrons of their lines for some other consideration than cash

fares. To illustrate — but only to illustrate, not to decide — it may be that a legislative enactment which imposed upon shippers of live stock the obligation to care for their stock *en route*, and to that extent to relieve the trainmen of the burden of its care, and which required the company to transport the shipper free as an equivalent for his relief of the train employees in the way stated, would be constitutionally valid — would not be a taking of private property without compensation. But the enactment in question does not provide for the equivalent of labor performed for transportation furnished. It declares that the transportation shall be furnished "in consideration of the usual price paid for the shipment of said car." What the railroad company is required to do is not required of it as a compensation for anything to be done for it by the shipper, but is required of it in the form of a gratuity over and above the usual and ordinary charges for transportation. The enactment is not framed upon the assumption that the usual price paid for the shipment of live stock is excessive to the extent of the passenger carriage of the shipper to and from the place of shipment, and that in order to make good the excess the shipper shall be transported free, but it is framed upon the assumption that the charge for the transportation of the car of stock is a reasonable one.

The brief of counsel for defendant in error suggests the importance of the shipper's accompanying his stock in order to care for it *en route*. We do not judicially know that it is important or advantageous to the shipper or to the company for the former to accompany his stock to market, nor does the act assume the importance or advantage either to the shipper or the company in the former's accompanying the stock. It imposes on him no such requirement. So far as the

act is concerned, he may accompany his stock or he may ride on another train. There is nothing whatever in the act from which an idea of obligation on the part of the shipper to pay or perform anything as an equivalent for his transportation can be derived. However, turning to the shipping contract made by the defendant in error, we perceive in it certain stipulations imposing on him the obligation to accompany and care for his stock, but this contract is no part of the statute in question. The statute does not purport to be framed upon the assumption that such contracts are or will be entered into between railroad companies and shippers of live stock. The contract is apart from the statute. None of its provisions is included within the terms of the statute. In short, there is no theory upon which this act can be upheld, and, therefore, we are constrained to hold it to be unconstitutional and void.

No cases of a like character have been brought to our attention except that of *Lake Shore Railway Co. v. Smith*, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858. That case involved the validity of an act of the legislature of Michigan requiring railroad companies to keep for sale 1000-mile tickets, at specified rates less than the regular rates, to be issued in the name of the purchaser and the members of his family, and to be good for use for two years from the date of sale. Commenting on this enactment the court said:

"If the legislature can interfere by directing the sale of tickets at less than the generally established rate, it can compel the company to carry certain persons or classes free. If the maximum rates are too high in the judgment of the legislature, it may lower them, provided it does not make them unreasonably low as that term is understood in the law; but it cannot enact a law making maximum rates and then pro-

Carrier v. Railway Co.

ceed to make exceptions to it in favor of such persons or classes as in the legislative judgment or caprice may seem proper. What right has the legislature to take from the company the compensation it would otherwise receive for the use of its property in transporting an individual or classes of persons over its road, and compel it to transport them free or for a less sum than is provided for by the general law? Does not such an act, if enforced, take the property of the company without due process of law? We are convinced that the legislature cannot thus interfere with the conduct of the affairs of corporations."

The judgments of the court of appeals and of the district court are reversed, and the latter court is directed to enter judgment for the defendant below.