FIRST STATE BANK OF HOLSTEIN, NEB., et al. v. SHALLENBERGER, Governor, et al.

(Circuit Court, D. Nebraska, Lincoln Division. October 16, 1909.)

1. CONSTITUTIONAL LAW (§ 296*)—DUE PROCESS OF LAW—BANKING—RESTRICTING BUSINESS TO CORPORATIONS—GUARANTY FUND.

The Nebraska act of March 25, 1909 (Laws Neb. 1909, p. 66, c. 10), which prohibits individuals from engaging in the banking business unless they do so through the agency of a corporation, and which also conditions the right to engage in that business in that form upon the making of enforced contributions from time to time to a depositors' guaranty fund to be employed in the payment of the claims of depositors of any bank which shall become insolvent, is in conflict with section 1 of the fourteenth amendment to the Constitution of the United States, which provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law"—and is in conflict with section 3 of article 1 of the Constitution of Nebraska, which declares: "No person shall be deprived of life, liberty or property without due process of law," and therefore is void.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 825-830, 834-846; Dec. Dig. § 296.*]

2. STATUTES (§ 64*)—VOID PROVISION, WHEN INDUCEMENT TO PASSAGE OF ACT, RENDERS ENTIRE ACT INVALID.

The provisions of the Nebraska act of March 25, 1909 (Laws 1909, p. 66, c. 10), which prohibit individuals from engaging in the banking business unless they do so through the agency of a corporation, and also condition the right to engage in that business in that form upon the making of enforced contributions from time to time to a depositors' guaranty fund to be employed in the payment of the claims of depositors of any bank which shall become insolvent, were the inducement to the passage of that act; and as those provisions, so coupled together, are void, the entire act is thereby rendered invalid.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66; Dec. Dig. § 64.*]

(Syllabus by the Court.)

Bill by the First State Bank of Holstein, Neb., and others against Ashton C. Shallenberger, Governor, and others, for an injunction. Decree for complainants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John L. Webster and William V. Allen, for complainants.

W. T. Thompson, Atty. Gen., Charles O. Whedon, and I. L. Albert, for defendants.

Before VAN DEVANTER, Circuit Judge, and T. C. MUNGER, District Judge.

T. C. MUNGER, District Judge. The Legislature of Nebraska passed an act relating to the conduct of the banking business within the state, by others than national banks, which was approved March 25, 1909 (chapter 10, p. 66, Laws Neb. 1909). This act purports to be a comprehensive regulation of the business named and to repeal existing laws upon that subject. It prohibits individuals from engaging in the banking business, unless they do so through the agency of a corporation, and also conditions the right to engage in that business upon the making of enforced contributions to a separate fund, called a "depositors' guaranty fund," to be used for the payment of the claims of depositors of any bank organized under the state law, which shall become insolvent. The state banking board is given authority to draw the money out of this fund to discharge the obligations of the insolvent bank to its depositors.

The complainants are certain incorporations and private individuals who were engaged in the banking business in this state under the laws in force prior to the passage of the act in question, and the object of the bill is an injunction against the enforcement of the act. The case is submitted for final decree upon a demurrer to complainants' bill. The questions involved are whether the act violates the provisions of the Constitution of the United States and of the Constitution of the state of Nebraska. May the Legislature of Nebraska restrict to corporations formed under the laws of the state the right to engage in the banking business, and at the same time require them, as a condition of engaging or continuing in such business, to make these periodic contributions to what is called the "depositors' guaranty fund"?

The banking business is one of the ancient and ordinary occupations, and has been and is recognized as a lawful business, not only in the state of Nebraska, but in all states of the Union, and in general in all countries that have developed civilization and commerce. It has not been regarded as a business of such harmful tendencies that society might entirely forbid its exercise.

Section 1 of the fourteenth amendment to the Constitution of the United States provides that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law."

And section 1 of article 1 of the Constitution of Nebraska declares that all persons have certain inalienable rights, and "among these are life, liberty and the pursuit of happiness"; and section 3 of the same article provides that:

"No person shall be deprived of life, liberty or property without due process of law."

In the Slaughter-House Cases, 16 Wall. 36, 116, 122, 21 L. Ed. 394, speaking of that portion of the fourteenth amendment to the national Constitution, Mr. Justice Bradley said:

"This right to choose one's calling is an essential part of that liberty which it is the object of the government to protect; and a calling, when chosen, is a man's property and right. Liberty and property are not protected where these rights are arbitrarily assailed. * * * In my view, a law which prohibits a large class of citizens from adopting a lawful employment, or from following a lawful employment previously adopted, does deprive them of liberty, as well as property, without due process of law. Their right of choice is a portion of their liberty; their occupation is their property."

In the case of Allgeyer v. Louisiana, 165 U. S. 578, 589, 17 Sup. Ct. 427, 431, 41 L. Ed. 832, the court quoted with approval from these remarks of Justice Bradley, and said:

"The liberty mentioned in that amendment means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned."

To the same effect are Butchers' Union Co. v. Crescent Co., 111 U. S. 746, 764, 4 Sup. Ct. 652, 28 L. Ed. 585; In the Matter of the Application of Peter Jacobs, 98 N. Y. 98, 105; People v. Marx, 99 N. Y. 377, 386, 2 N. E. 29, 52 Am. Rep. 34; City of Chicago v. Netcher, 183 Ill. 104, 55 N. E. 707, 48 L. R. A. 261, 75 Am. St. Rep. 93; People v. Steele, 231 Ill. 340, 83 N. E. 236, 14 L. R. A. (N. S.) 361, 121 Am. St. Rep. 321; Cooley on Torts, p. 277.

At common law the business of banking was regarded as one of the lawful occupations, in which citizens might engage. In the case of Bank of California v. San Francisco, 142 Cal. 276, 75 Pac. 832, 64 L. R. A. 918, 100 Am. St. Rep. 130, the court says:

"Admittedly, the mere right to do a banking business is not a franchise in any sense of the word. It belongs to citizens generally, and is a common right, in the same sense that the right to do a grocery or dry goods business is available to all citizens, and no grant from the sovereign is essential to its existence. Any individual, or any number of individuals, may, under such regulations as the state, in the exercise of its police powers, may legally make, engage therein, without any grant from the state."

And in Bank of Augusta v. Earle, 13 Pet. 519, 596, 10 L. Ed. 274, it is said:

"At common law the right of banking in all its ramifications belonged to individual citizens and might be exercised by them at pleasure. * * * Undoubtedly the sovereign authority may regulate and restrain this right."

Of like import are State v. Scougal, 51 N. W. 858, 3 S. D. 55, 15 L. R. A. 477, 44 Am. St. Rep. 756; Ex parte Pittman (Nev.) 99 Pac. 700; 5 Cyc. 433.

By the express terms of the act in question individuals may transact the banking business only under corporate form and management, and such corporations must also submit to the payment out of their funds of the claims of the private creditors of other banks when such

banks become insolvent, although the banks required to make such payment have had no supervision or control of the acts of such insolvent bank. It is said that this requirement is not a deprivation of the property of the citizen engaged in the banking business, but is merely a reasonable regulation of the business under the police power of the state; that banks are subject to regulation by the state; and that the failure of banks to pay their depositors causes such widespread financial loss and attendant suffering, and so impairs business confidence, that the state has an especial interest in the prevention of such disasters. It is apparent that the effect upon the community of the insolvency of banks can differ only in degree, and not in kind, from the effect of the insolvency of any other debtor. In fact, the failure of large railway, insurance, mercantile, or manufacturing companies may, and often does, more profoundly affect the business community than the failure of a small bank.

If the state possesses the power to single out a certain form of business activity and to compel the citizen who engages in it to pay the losses of strangers, whose only relation to him is that their business is known by the same general name, why may it not require all those engaged in one occupation to pay the losses of those engaged in other occupations? And if the state may require those of one class to contribute to the losses of the same class, it is but a step further to require the fortunate to bear the financial losses of the less fortunate as often as inequality of fortune may arise. The provisions relating to the depositors' guaranty fund cannot be sustained on the theory that society is discharging an obligation it owes to those pauper and dependent classes who have always been regarded as proper subjects of its bounty and care. The creditors of banks are like the creditors of any other debtor, and this act is not confined to the relief of paupers; but payment is required to all depositors, whatever their financial condition may be.

It is insisted that the provision in question is similar to those regulatory measures often imposed upon banking and other business interests, whereby the state lawfully imposes license fees, requires frequent examinations or inspections, designates the character of invesments that may be held, prescribes the amount of capital necessary to engage in a designated business, and the like. It is sufficient to say that these and similar measures are founded on the theory that they merely require the one upon whom they are imposed to pay the expense of inspection of his own business and to safeguard those who deal with him. It is entirely clear that this act of the Legislature does deprive the citizen of his right to engage in a lawful business, except upon the terms that the state will take of his property, without his consent, for the private use of others, and without due process of law. This is not accomplishd by requiring that A. shall pay directly to B., or to B.'s creditors, a certain sum of money for the financial relief of B., or of his creditors; but the same result is effected through a process akin to taxation. It is well settled that the state cannot, under the form of taxation, take the property of its citizens and give it to build up the private fortunes of others.

In Loan Association v. Topeka, 20 Wall. 655, 663, 22 L. Ed. 455,

bonds of the city of Topeka were in question, which had been voted, pursuant to an act of the Legislature, to aid a manufacturing company in establishing its shops at that city. In declaring them void the court said:

"It must be conceded that there are such rights in every free government beyond the control of the state. A government which recognized no such rights, which held the lives, the liberty, and the property of its citizens subject at all times to the absolute disposition and unlimited control of even the most democratic depository of power, is after all but a despotism. * * * No court, for instance, would hesitate to declare void a statute which * * * should enact that the homestead now owned by A. should no longer be his, but should henceforth be the property of B. * * * To lay with one hand the power of the government on the property of the citizen, and with the other to bestow it upon favored individuals to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law and is called taxation. This is not legislation. It is a decree under legislative forms. * * * If it be said that a benefit results to the local public of a town by establishing manufactures, the same may be said of any other business or pursuit which employs capital or labor. The merchant, the mechanic, the innkeeper, the banker, the builder, the steamboat owner, are equally promoters of the public good, and equally deserving the aid of the citizens by forced contributions. No line can be drawn in favor of the manufacturer which would not open the coffers of the public treasury to the importunities of two-thirds of the business men of the city or town."

It is needless to review at length the many cases which hold to the same effect. See Parkersburg v. Brown, 106 U. S. 487, 491, 1 Sup. Ct. 442, 27 L. Ed. 238 (bonds to aid manufacturers); Cole v. La Grange, 113 U. S. 1, 9, 5 Sup. Ct. 416, 28 L. Ed. 896 (bonds to aid manufacturers); Dodge v. Mission Tp., 107 Fed. 827, 832, 46 C. C. A. 661, 54 L. R. A. 242 (bonds to aid manufacturers); Allen v. Inhabitants, 60 Me. 124, 11 Am. Rep. 185 (bonds to aid manufacturers); Coates v. Campbell, 37 Minn. 498, 35 N. W. 366 (bonds to aid manufacturers); Lowell v. Boston, 111 Mass. 454, 15 Am. Rep. 39 (bonds to aid sufferers from Boston fire); Patty v. Colgan, 97 Cal. 251, 31 Pac. 1133, 18 L. R. A. 744 (aid to flood sufferers); Lucas County v. State, 75 Ohio St. 114, 135, 78 N. E. 955 (annuities for the blind); Wisconsin Keeley Institute Co. v. Milwaukee Co., 95 Wis. 153, 70 N. W. 68, 36 L. R. A. 55, 60 Am. St. Rep. 105 (bounty to private inebriate hospital); State v. Froehlich, 118 Wis. 129, 94 N. W. 50, 61 L. R. A. 345, 99 Am. St. Rep. 985 (bounty to private inebriate hospital); State v. Switzler, 143 Mo. 287, 45 S. W. 245, 40 L. R. A. 280, 65 Am. St. Rep. 653 (bounty to students attending state university); Kingman v. City of Brockton, 153 Mass. 255, 26 N. E. 998, 11 L. R. A. 123 (aid in erection of building for Grand Army post); State v. Osawkee Tp., 14 Kan. 418, 19 Am. Rep. 99 (furnishing seed grain to farmers); Deering & Co. v. Peterson, 75 Minn. 118, 77 N. W. 568 (appropriation to purchase seed grain for those without crops); Deal v. Mississippi County, 18 S. W. 24, 107 Mo. 464, 14 L. R. A. 622 (bounties to growers of trees); Mo. Pac. Ry. Co. v. Nebraska, 164 U. S. 403, 17 Sup. Ct. 130, 41 L. Ed. 489 (taking of railway right of way for private elevator); Atchison, T. & S. F. Ry. Co. v. Campbell, 61 Kan. 439, 59 Pac. 1051, 48 L. R. A. 251, 78 Am. St. Rep. 323 (free tickets to stock shippers); Harp v. Choctaw, O. & G. Ry. Co. (C. C.) 118 Fed. 169 (compelling building of spur track to coal

mine); Oxnard Beet Sugar Co. v. State of Nebraska, 73 Neb. 57, 66, 68, 102 N. W. 80, 105 N. W. 716 (bounty for growers of sugar beets); Michigan Sugar Co. v. Dix, 124 Mich. 674, 83 N. W. 625, 56 L. R. A. 329, 83 Am. St. Rep. 354 (bounty for growers of sugar beets); Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 97 N. W. 455 (bounty for growers of sugar beets).

It is also apparent that the prohibition of the right to engage in the banking business by individuals, except upon the terms stated, was the inducement to the passage of this act of the Legislature. Unless it be wholly void, there is no other state statute regulating the conduct of the banking business, and to assume that the Legislature would have passed this act, even although not applying to individuals, implies that it would have left individual bankers free from any restraint, with liberty to operate as many banks as they chose, to receive deposits, including the public money, to operate with little or no capital, to make no reports, be subject to no examination, and pay no license fees while subjecting corporate banks to the strictest regulation, and only allowing them to do business when possessed of fixed and large amounts of capital.

Counsel at the argument conceded, and rightly so, as we think, that if the act could not lawfully prohibit individuals from engaging in the banking business, except upon the terms stated, the whole act must fail. In this view of the case, it has not been necessary to decide whether or not the act could be sustained as to existing banking corporations, if it were valid in other respects. See section 1, art. 11b, Const. Neb.; Greenwood v. Freight Co., 105 U. S. 13, 26 L. Ed. 961; Spring Valley Waterworks v. Schottler, 110 U. S. 347, 352, 4 Sup. Ct. 48, 28 L. Ed. 173; New York, etc., Co. v. Bristol, 151 U. S. 556, 567, 14 Sup. Ct. 437, 38 L. Ed. 269; Lake Shore, etc., Co. v. Smith, 173 U. S. 684, 698, 19 Sup. Ct. 565, 43 L. Ed. 858. Neither has it been necessary to decide whether the state, as a matter of regulation only, could restrict the business of banking to corporations, if the other restrictions, unlike the present guaranty fund provision, were all such as lawfully could be imposed upon individuals engaged in that business. See Commonwealth v. Vrooman, 164 Pa. 306, 30 Atl. 217, 25 L. R. A. 250, 44 Am. St. Rep. 603; State ex rel. v. Woodmansee, 1 N. D. 246, 46 N. W. 970, 11 L. R. A. 420; State v. Scougal, 3 S. D. 55, 51 N. W. 858, 15 L. R. A. 477, 44 Am. St. Rep. 756.

The act not only attempts to exclude individuals from engaging in the banking business, unless they do so through the agency of a corporation, but also attempts to impose upon them, as a condition to their engaging in that business even in that form, a duty to make good the obligations of all other bankers in the state to their depositors. For the reasons before stated, we are of opinion that this cannot be done consistently with the fourteenth amendment to the national Constitution, or with section 3 of article 1 of the state Constitution, and that the act is therefore void.

It follows that the demurrer must be overruled, and a decree must be entered enjoining the enforcement of the act.