The New York Trust Company, Plaintiff, *v.* Buffalo and Lake Erie Traction Company et al., Defendants.

(Supreme Court, Erie Special Term, June, 1920.)

Corporations — when public service corporation cannot be compelled to continue operations — traction companies — railroads — mortgages — receivers.

A public service corporation cannot be compelled to continue indefinitely, operations which will result in the exhausting of its assets. (P. 417.)

Where by the petition of the receiver of a traction company operating lines from the city of Buffalo to the city of Erie, Pa., appointed in an action to foreclose a trust mortgage on its lines and properties, given to secure an issue of bonds, it appears that the income from said lines for four years has not been sufficient to pay operating expenses and that there is no prospect of any substantial improvement in conditions, an order will be granted authorizing the receiver to discontinue the operation of said lines, after September 15, 1920, in order

that the patrons of the road may be enabled in the meantime to adjust themselves to changed conditions and make new and other arrangements for transportation of passengers and freight, but said order must be so framed as to exclude from its operations the section of the line running between the city of Dunkirk and the village of Fredonia, the successful and profitable operation of which may be resumed independent of the through line.

The affidavits being in conflict as to whether the taking up of the rails and dismantling the road will be for the best interests of the bondholders, the disposition of that portion of the receiver's application asking permission to take such course, will be reserved until the presentation of bids for the lines as a whole, and the report thereon made.

Motion by George Bullock, as receiver of the above-named traction company, for leave to abandon the operation of all lines of said company within the state of New York.

Lyman M. Bass, for George Bullock, receiver of Buffalo and Lake Erie Traction Company, petitioner.

De Forest Brothers, for New York Trust Company, mortgage trustee and plaintiff.

Morton G. Bogue, for a committee for bondholders of said traction company.

Frank F. Williams, for the Lakeside Cemetery Association and Buffalo Orphan Asylum.

Henry W. Killeen, for John F. Burke.

Thomas C. Burke, for Acme Shale Brick Company.

Willard H. Ticknor, for the village of Hamburg.

Others appearing for themselves and property owners.

Wheeler, J.   The petitioner is the receiver of the property of the traction company appointed by this court in an action to foreclose a trust mortgage on its lines and properties given to secure an issue of bonds.

The lines extend from the city of Buffalo to the city of Erie, Penn., in which latter city it operates electric street car lines.

For some four years the petitioner has operated said lines as receiver, and in his petition alleges that during all of said time the income received from said operation, so far as it relates to lines within the state of New York, has not been sufficient to pay operating expenses, but that said operation has been at a financial loss to said road and to the receiver, and is without prospect of any substantial improvement in conditions.   The receiver, therefore, asks for an order of this court authorizing him to discontinue the operation of the traction company's lines within the state of New York, and also for permission to take up and dismantle all of said railway, and to remove and sell the tracks, ties, poles, sidings, switches, turnouts, bridges, culverts and other property in the custody and possession of the receiver, excepting such property as was formerly owned by the Hamburg Railway Company.

It is further represented to the court that unless such a course is pursued, the traction company will, in the near future, become liable for large sums for repaving between and along its tracks, amounting to many thousands of dollars, without available funds to meet such expenses.

The counsel for a committee representing nearly $6,000,000 in amount of bonds out of a total issue of some $7,000,000 bonds, appears and urges the prayer of the petition be granted.

Counsel for the mortgage trustee also appears on this application and also states in his opinion it is for

the advantage of those financially interested as bond-
holders that the petition be granted, but nevertheless
submitting to the protection of the court the interests
of the minority bondholders who have not deposited
their bonds with the committee, and are not repre-
sented upon this hearing. Certain parties represent-
ing themselves, and perhaps it may be said the public
at large, appear and oppose granting the prayer of
the petition. Many of them, no doubt, will be seriously
affected by the discontinuance of the service of the
trolley line in question. The public interests, in so far
as possible, should be protected by the court. It seems
to be well established, however, by a line of well-con-
sidered decisions, that a public service corporation
cannot be compelled to continue indefinitely opera-
tions, where such operations will result in the exhaus-
tion of its assets.

The following authorities are in point: Morawetz on
Private Corporations (§ 1119): "The company must
make an honest endeavor to satisfy the wants of the
public, and must use all means in its control to do so;
but having done all in its power, it cannot be charged
with the failure of its endeavors. * * * The duty
of a railroad company to operate its road requires it
merely to meet the public wants and exigencies. If
there is not sufficient traffic over a particular line of
road to pay for the expense of running trains, this is
sufficient evidence that the public do not require it to
be kept in operation; and in such case the company
may cease operating the road, unless this be contrary
to the express terms of the charter."

In *Central Bank & Trust Corp.* v. *Cleveland*, 252
Fed. Repr. 530, branch railway abandoned because of
loss: "This does not mean, however, in these cases,
that the courts have a right to require an indefinite
operation, to the exhaustion of the assets, but that, in

view of the fact that the public utility corporation has been created and exists, the court will take it for granted that it can be operated so as not at least further to impair the value of the assets, and will direct it to be operated, even by the issue of receivers' certificates, until arrangements can be made to meet the exigencies. If it should be found that it cannot be operated, except at a loss, it would be open to the public, if it be authorized as a public measure, to condemn the property and take it for public purposes at its ascertained value; but it cannot take it by the method of requiring its operation to the absolute exhaustion of the assets, and in that way effect the taking of private property for public purposes without compensation." P. 533.

In *State of Iowa* v. *Old Colony Trust Co.,* 215 Fed. Repr. 307, part of road abandoned because of loss: " Here is a case where the line sought to be abandoned is not only not self-supporting, but its continued operation jeopards the successful operation of the entire system of which it is merely a part. Moreover, its continued operation in its present condition is dangerous to life and property and there is no money or financial ability to improve its condition. Not only so, but there is little public necessity for its continued operation, whereas, there is a great public necessity for the continued operation of the balance of the system.

" In such circumstances the railroad company may abandon such an unprofitable and irreclaimable part of its road and neither the state nor unfortunate investors along the line can justly complain. They cannot force a railroad company to do the impossible. *Jack* v. *Williams,* (C. C.) 113 Fed. Repr. 823; 76 C. C. A. 165; 145 Fed. Repr. 281; *Commonwealth* v. *Fitchburg Railroad Co.,* 12 Gray (Mass.), 180; *People* v. *Albany &*

*Vermont Railroad Co.,* 24 N. Y. 261; 82 Am. Dec. 295; Morawetz on Private Corporations, § 1119.'' P. 312.

In *People* v. *Albany & Vermont R. Co.,* 24 N. Y. 261, cited in the Iowa case, the court says: '' Neither by the provisions of the statute, nor otherwise, is it under any legal obligation, or owes any duty to the State or the public, to maintain and operate its road for an instant of time after its own interests shall cease to be subserved thereby.'' P. 266.

In *Brooks-Scanlon Co.* v. *Railroad Commission,* 40 Sup. Ct. Repr. (64 L. Ed. 212), a branch logging road abandoned because of loss: ''A carrier cannot be compelled to carry on even a branch of business at a loss, much less the whole business of carriage. On this point it is enough to refer to *Northern P. R. Co.* v. *North Dakota,* 236 U. S. 585, 599, 600, 604, 59 L. Ed. 735, 741, 743–745, L. R. A. 1917 F. 1148, P. U. R. 1915 C. 277, 35 Sup. Ct. Rep. 429, Ann. Cas. 1916 A, 1, and *Norfolk & W. R. Co.* v. *West Virginia,* 236 U. S. 605, 609, 614, 59 L. Ed. 745, 747, 749, P. U. R. 1915 C 293, 35 Sup. Ct. Rep. 437. * * * If the plaintiff be taken to have granted to the public an interest in the use of the railroad it may withdraw its grant by discontinuing the use when that use can be kept up only at a loss. *Munn* v. *Illinois,* 94 U. S. 113, 126, 24 L. Ed. 77, 84.'' P. 213.

In *Gilchrist* v. *Waycross Street & Suburban Ry. Co.,* 246 Fed. Repr. 952, the whole street railway abandoned because of loss: '' The street railway company was insolvent; it could not operate the road, so as to make it pay expenses, much less the annual interest on its debt. A receiver attempted to operate it, and in aid of that effort was authorized to borrow money on certificates. He could not make the property pay operating expenses, and a decree was taken, foreclosing the mortgage, and fixing the priorities of the liens

against the company, and ordering the receiver to advertise for sealed bids. None were submitted. Thereafter by supplemental decree the receiver was directed to sell the street railway property at public sale, with the right of the purchaser either to operate the system or dismantle and remove the physical property." P. 953.

*Jack* v. *Williams,* 113 Fed. Repr. 823, a short part of railroad abandoned because of loss: " Whilst thus serving the public, however, no corporation or private person is obliged to continue the service without a reasonable remuneration. No one can be compelled to serve the public for nothing. Private property of no kind, including railroad property, can be used for public purposes without compensation. *Smyth* v. *Ames,* 169 U. S. 467, 18 Sup. Ct. 418, 42 L. Ed. 819; *Road Co.* v. *Sandford,* 164 U. S. 578; 17 Sup. Ct. 198, 41 L. Ed. 560; *Chicago, M. & St. P. R. Co.* v. *Minnesota,* 134 U. S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970; *Railway Co.* v. *Smith,* 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858. All these cases determine that a railroad company, in the full enjoyment and use and capacity to use its franchises, cannot be compelled to exercise its franchises without reasonable remuneration. *A fortiori* a railroad corporation, or a person owning a railroad, cannot be compelled to operate that road, not only without remuneration, but at a loss." P. 827.

Same case is affirmed in 145 Fed. Repr. 281, and the court says: " The fact that the road does not pay the expenses of running the trains is persuasive evidence that the service to the public does not require it to be kept in operation. Morawetz on Private Corporations, Sec. 1119."

However, we are of the opinion that the receiver should not stop operations forthwith, but only after such a lapse of time as will enable the patrons of the

road to adjust themselves to changed conditions, and make new and other arrangements for transportation of passengers and freight.

The receiver's petition for leave to discontinue the operation of that portion of the road described in the petition is granted, but such discontinuance shall not go into effect prior to the 15th day of September, 1920.

We are of the opinion, too, that the order to discontinue operation should not include that portion of the line running from the village of Fredonia to the city of Dunkirk, and formerly known as the " Dunkirk and Fredonia Railroad." This section was in successful operation for many years before the line from the city of Buffalo to the city of Erie was built. For all that appears the successful and profitable operation of this particular section of the road may be resumed independent of the through line, and should be continued if it can be successfully done. In any event the order permitting a discontinuance of operation will be so framed as to exclude from the operations of said order said section of the line running between the city of Dunkirk and the village of Fredonia. If such section is to be hereafter abandoned, it should be upon a separate and distinct application and after a hearing. We think that portion of the receiver's application in which he asks that he be permitted to take up the rails and dismantle the road should for the present be withheld. There is a conflict of opinion as disclosed by the affidavits read on this hearing as to whether such a course would be for the best interests of the bondholders. Some have expressed the view the road would bring more as a whole, and the sale should be had under a decree in the foreclosure action now pending.

In our judgment the receiver should invite bids for the line in question as a whole, and at the same time for any particular section or sections of said line

which others may be willing to purchase. Also said receiver should invite bids for the property of said company in the receiver's hands with a view of giving the purchaser the right to take up and remove the same and dismantle said road; that as a pledge of good faith of all or any bidder they be required to deposit certified checks for five per cent of the amount of their bids; that on the 15th day of September, 1920, said receiver report any and all such bids to this court for acceptance or rejection. On the presentation of any such bids this court will be able to determine better what order should be made as to the right to dismantle said properties and line. To that end the final disposition of the application to dismantle is reserved until the presentation of such bids and report, if any, are made.

To the end that the public may have full and ample notice of the pending application, and of the inviting of bids, said receiver shall give public notice inviting such bids by publishing the substantial provisions of the order to be entered hereon in at least two newspapers published in the city of Buffalo, and in at least one in the city of Erie, for twice a week for four successive weeks, and shall also mail to the town clerk of each of the towns through which the line of railway passes, a copy of the order to be entered hereon. This course will in our judgment give the public full opportunity to act and organize to purchase or acquire said railway, or portions thereof, and at the same time enable the court to act more advisedly on the questions reserved for further consideration.

In speaking of the lines or road of the Buffalo and Lake Erie Traction Company, the court only intends to refer to those portions thereof within the state of New York.

Ordered accordingly.