PENNSYLVANIA RAILROAD COMPANY AND WEST JERSEY
AND SEASHORE RAILROAD COMPANY, PROSECUTORS,
v. BOARD OF PUBLIC UTILITY COMMISSIONERS.

LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY,
PROSECUTOR, v. SAME.

ERIE RAILROAD COMPANY, PROSECUTOR, v. SAME.

NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD
COMPANY, PROSECUTOR, v. SAME.

NEW JERSEY AND NEW YORK RAILROAD COMPANY,
PROSECUTOR, v. SAME.

DELAWARE, LACKAWANNA AND WESTERN RAILROAD
COMPANY, PROSECUTOR, v. SAME.

Argued February 21, 1912—Decided July 15, 1912.

The board of public utility commissioners made an order requiring
(1) each railroad company affording intrastate *commutation
service* from points in New Jersey to Jersey City, New Jersey,
or to Hoboken, New Jersey, when request is made upon it and
proper payment is tendered therefor, to sell tickets for said com-
mutation service specifically designating in every case both ter-
mini of the journey, and to publish rates for such commutation
service designating both termini specifically, and to file schedules
of said rates with the commission; and (2) requiring each rail-
road company carrying in intrastate journeys passengers to or
from Jersey City, New Jersey, or to or from Hoboken, New Jer-
sey, *at special rates* to follow the same course with respect to
the sale of special rate tickets, publication of rates and filing
of schedules. The order was based upon a determination of (*a*)
the existence of "regulations" and "practices" that are unjust
and unreasonable and arbitrarily or unjustly discriminatory, and
(*b*) the subjection of persons and localities to prejudice and dis-
advantage. *Held—*

(1) That such order is within the jurisdiction of the board as conferred by the Public Utility law (*Pamph. L.* 1911, *p.* 374), if such determination is justified by proof.

(2) That such order is within the jurisdiction of the board, it appearing that such railroad companies refuse to sell, or quote rates for, such commutation or special rate tickets (except "school" tickets) to intrastate passengers to and from their Hudson river terminals (Jersey City and Hoboken), specifically designating both termini of the journey (though they afford such commutation and special rate service to intrastate passengers requiring it), and insist that such passengers shall take, as evidence of their right to such transportation, tickets reading to and from New York City, and at New York City rates, and though they quote and sell commutation and special rate tickets for all other intrastate journeys where such service is afforded specifically designating the termini of such journeys upon such tickets.

(3) That the order does not require the establishment of a commutation service from and to other New Jersey points to and from Jersey City and Hoboken. It merely requires that tickets shall be sold for an existing service designating specifically the termini of the journey within this state in accordance with the fact, and that commutation and other special rates for such service be quoted and filed.

(4) That the order does not involve the exercise of power by the state, through the public utility board, to compel the railroad companies, independent of any action on their part, to issue commutation or other special forms of tickets. It involves merely the exercise by the state, through the board, of the power to end unjust discrimination growing out of the refusal of the companies to quote and sell tickets designating specifically both termini of the intrastate journey.

(5) That the Public Utility law (*Pamph. L.* 1911, *p.* 374) is not merely declaratory of the common law. It forbids the giving to any locality any undue or unreasonable preference or advantage, or the subjection of any locality to any prejudice or disadvantage.

(6) That the order under review does not involve any interference with, nor impose any burden upon, interstate commerce.

---

On *certiorari.*

Before Justices TRENCHARD, PARKER and MINTURN.

For the Pennsylvania Railroad Company and West Jersey and Seashore Railroad Company, *Vredenburgh, Wall & Carey* and *Herbert A. Taylor* (of the New York bar).

JUNE TERM, 1912.    69

*54 Vroom.*    Penna. R. R. Co. v. Public Utility Com'rs.

For the Lehigh Valley Railroad Company of New Jersey, Erie Railroad Company, New York, Susquehanna and Western Railroad Company and New Jersey and New York Railroad Company, *Collins & Corbin* and *Herbert A. Taylor* (of the New York bar).

For the Delaware, Lackawanna and Western Railroad Company, *Maximilian M. Stallman* and *Herbert A Taylor* (of the New York bar).

For the board of public utility commissioners, *Frank H. Sommer.*

The opinion of the court was delivered by

TRENCHARD, J. The order brought up for review by these writs was made by the board of public utility commissioners on October 3d, 1911, after hearing, upon notice. The six cases have been here argued and will be considered together.

The order requires—*first,* each railroad company affording intrastate *commutation service* from points in New Jersey to Jersey City, New Jersey, or to Hoboken, New Jersey, when request is made upon it and proper payment is tendered therefor, to sell tickets for said commutation service specifically designating in every case both termini of the journey, and to publish rates for such commutation service designating both termini specifically, and to file schedules of said rates with the commission, and *second,* requiring each railroad company carrying in intrastate journeys passengers to or from Jersey City, New Jersey, or to or from Hoboken, New Jersey, *at special rates,* to follow the same course with respect to the sale of special rate tickets, publication of rates and filing of schedules.

We now proceed to consider, in convenient order, the reasons assigned and argued by the railroad companies prosecuting these writs why the order should be set aside.

We see no merit in the contention that the order is not within the jurisdiction of the board.

The Public Utility law (*Pamph. L.* 1911, *p.* 374) vests in the board the following, among other, powers:

Section 17 (*a*). "The board shall have power, after hearing, upon notice, by order in writing to require every public utility * * * to comply with the laws of this state * * * and to conform to the duties imposed upon it thereby * * *."

Section 16 (*e*). "The board shall have power * * * after hearing, by order in writing, to fix just and reasonable standards, classifications, regulations, practices, measurements or service to be furnished, imposed, observed and followed thereafter by any public utility, as herein defined."

It imposes upon the prosecutors the following, among other, duties:

Section 18 (*c*). "No public utility * * * shall * * * adopt, maintain or enforce any regulation, practice * * * which shall be unjust, unreasonable, unduly preferential, arbitrarily or unjustly discriminatory * * *."

Section 18 (*d*). "No public utility * * * shall make or give, directly or indirectly, any undue or unreasonable preference or advantage to any person or corporation or to any locality or to any particular description of traffic in any respect whatsoever, or subject any particular person or corporation or locality or any particular description of traffic to any prejudice or disadvantage in any respect whatsoever."

Section 18 (*a*). "No public utility * * * shall make, impose or exact any * * * unjustly discriminatory * * * commutation rate * * * and other special rate * * *."

The order under review was based upon a determination of (*a*) the existence of "regulations" and "practices" that are unjust and unreasonable and arbitrarily or unjustly discriminatory, and (*b*) the subjection of persons and localities to prejudice and disadvantage.

If, therefore, the order was justified by the proofs, it was within the jurisdiction of the board.

We are of opinion that the order was justified by the proofs.

At the close of the hearing, held upon notice to the prosecutors, and at which they were represented and produced testimony, the board found the following matters of fact applicable to the prosecutors:

*First.* That the carriers transporting passengers from Jersey points to certain Hudson river boundary terminals, notably Jersey City and Hoboken, do not, as a general rule, sell *commutation* or *special rate* tickets specifically good to and from said river boundary terminals.

*Second.* That to this general rule there is a notable exception in that forty-six trip monthly school commutation tickets are sold specifically between Jersey points to and from Hoboken and Jersey City.

*Third.* That commutation and other special rate tickets are sold specifically good to and from Camden.

*Fourth.* That except for the Hudson river boundary terminals, Hoboken and Jersey City, the carriers quote and sell commutation and special rate tickets for intrastate journeys between points in New Jersey, where they afford such commutation and special rate service, specifically designating the termini of such journeys upon such tickets.

*Fifth.* That the carriers (except as to the forty-six trip commutation school tickets) transporting passengers from Jersey points to Hoboken and Jersey City, refuse to carry said passengers in intrastate commerce at commutation or special rates and insist that said passengers be carried in interstate commerce or under a contract purporting on its face to be a contract in interstate commerce.

*Sixth.* That the carriers afford commutation *service* to Jersey City and Hoboken, though they quote no rates therefor specifically.

*Seventh.* That there are no other points to which intrastate commutation *service* is afforded where the rates for such service designating the termini of the intrastate journey are not quoted.

Such facts, if properly found, establish (*a*) the existence of "regulations" and "practices" that are unjust and unreasonable and arbitrarily or unjustly discriminatory, and

(b) the subjection of persons and localities to prejudice and disadvantage.

We think such finding was justified by the evidence and admissions of counsel before the board. The only fact now seriously questioned by the prosecutors is that the carriers afford commutation *service* to Jersey City or Hoboken.

Now, it appeared that the prosecutors are railroad companies operating lines across the State of New Jersey, some having a terminal in Jersey City and some in Hoboken, where the intrastate journey ends. All carry, among others, passengers bound to one or the other of such cities, and no farther. Many of these passengers are commuters from other New Jersey points, and, of course, require service. The insistence of the carriers at the hearing before the utility board was that they furnished such commutation *service,* and it was frequently reiterated, and was coupled with the argument that it was *at reasonable .rates.* The proofs also show that such *service* was held out to commuters and was in fact furnished. It appeared that when the persons desiring it applied to the ticket offices for it they were compelled to take tickets reading to New York City, by which the service was then furnished to Jersey City or Hoboken, as the case might be. The carriers' contention now is that this commutation *service* which they held out and furnished to and from Jersey City or Hoboken was not commutation *service* solely because the prosecutors insisted upon selling only tickets reading to New York City. We see no merit in the contention, and we think the finding was justified by the evidence and admissions of counsel.

The fact is, then, that the prosecutors refuse to sell, or to quote rates for, commutation or special rate tickets (except "school" tickets) to intrastate passengers to and from their Hudson river terminals (Jersey City and Hoboken) specifically designating both termini of the journey (though they afford such commutation and special rate service to intrastate passengers requiring it), and insist that such passengers shall take, as evidence of their right to such transportation, tickets reading to and from New York City, and at New York City

rates, and though they quote and sell commutation and special rate tickets for all other intrastate journeys where such service is afforded specifically designating the termini of such journeys upon such tickets.

The issue is thus narrowed down to the question whether such difference in practice is to be construed as a "regulation" or "practice" which is unjust, unreasonable, unduly preferential, or unjustly discriminatory, or otherwise in violation of law.

We agree with the utility board that it is, for the reasons we will now state. This refusal to sell commutation or other special rate tickets to and from Hoboken or Jersey City, specifically designating both termini, deprives the passenger who would commute on the carrier's line to either named point, and no farther, of the right he enjoys in common with every other passenger in intrastate journeys in the State of New Jersey to the protection which the law of the state throws around him as regards the justice and reasonableness of the rates, and of regulations and practices involved in intrastate travel. It seems to us that the character of an intrastate journey is not changed by the circumstance that the carrier requires the passenger to buy transportation on its face in excess of his requirements over the carrier's line, and to a point in a neighboring state. The Public Utility law, as we have seen, makes certain prohibitions upon the acts of public utilities in this respect. They shall not "adopt, maintain or enforce any regulation, practice which shall be unjust, unreasonable, unduly preferential, arbitrarily or unjustly discriminatory" (section 18 *c*); nor "subject any particular person or corporation or locality or any particular description of traffic to any prejudice or disadvantage in any respect whatsoever" (section 18 *d*). If, in ordinary commutation intrastate travel, the passenger may appeal to the commission in the matter of the justice and reasonableness of rates, and the justice and reasonableness of any of the carrier's regulations, it cannot be denied that the commuter to or from Hoboken or Jersey City who, as the *sine qua non* of buying his transporta-

tion, must resign the remedies and appeals accorded him by law, is subjected to prejudice or disadvantage.

The question here involved is not the reasonableness or un-reasonableness of particular rates, nor whether the rates involved are or are not just and reasonable. The question here is whether all New Jersey commuters in intrastate journeys are to be accorded their rights under the law or whether such rights are to remain inviolate only for those commuters who do not travel to or from certain Hudson river terminals.

The prosecutors point out that section 16 (*c*) of the Public Utility act confers on the board the power "after hearing, upon notice, by order in writing, to fix just and reasonable rates * * * whenever the board shall determine any *existing* individual rate, joint rate, toll, charge or schedule thereof or commutation, mileage, or other special rate to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential," and contend that "only where such commutation rates have been in existence" is the board given the power to "consider and determine whether they are reasonable." Counsel urge that the language of the statute contemplates "the possible existence and non-existence, side by side, of commutation rates as a condition not in violation of public policy." In reply, it may be said that the carriers aver that they already afford commutation *service* to Jersey City and to Hoboken. They contend, however, that they have not established *commutation rates to Jersey City and Hoboken,* but only through these places (where a stop-off is allowed) to New York. As the commutation service already exists, it obviously requires no order of the board to establish it. The board properly found that there were no other points to which intrastate commutation service is afforded where the rates for such service, designating the termini of the intrastate journey, are not quoted. We are unable to perceive why commutation service should be furnished from New Brunswick to Trenton, for instance, and rates quoted therefor specifically, and commutation service be furnished from New Brunswick to Jersey City, and rates *not* quoted therefor specifically.

Moreover, it will be observed that the fixation of rates is not the only power conferred upon the board upon which this matter hangs. The act, as we have seen, provides (section 16 *e*) that the board shall have power, "after hearing, by order in writing, to fix just and reasonable standards, classifications, *regulations, practices,* measurements or service to be furnished, imposed, observed and followed thereafter by any public utility as herein defined."

To afford a service and to quote no rate and sell no ticket for the same specifically designating both termini of the journey does not commend itself to our judgment as a just and reasonable "regulation" or "practice."

The objection and argument that the order under review requires the establishing of a commutation service from and to other New Jersey points to and from Jersey City and Hoboken, cannot avail the prosecutors, for such is not the effect of the order.

We have pointed out that the insistence of the prosecutors throughout the proceedings before the board, was that they already afford commutation *service* to Jersey City and to Hoboken, but have not established *rates* to Jersey City and Hoboken, but only through these places (where a stop-off is allowed) to New York City, and the board properly found such service to be in fact afforded. Hence, the order does not require the establishment of a commutation service. It merely requires that tickets shall be sold for an existing service designating specifically the termini of the journey within this state in accordance with the fact; and that commutation and other special rates for such service be quoted and filed.

So, too, the objection and argument based upon the alleged want of power of the state, through the board, to compel the prosecutors, *independent of any action on their part,* to issue commutation or other special form of tickets, cannot avail the prosecutors in this proceeding.

Such a power is not essential to sustain the order under review. The order involves merely the exercise by the state, through the board, of the power to end unjust discrimination

growing out of the refusal of the prosecutors to quote and sell tickets designating specifically both termini of the intrastate journey. It will be seen, therefore, that the case of *Lake Shore & M. S. R. Co.* v. *Smith,* 173 *U. S.* 684, and the adjudications following it, have no application to the cases at bar.

It will also be seen that the order, viewed in this light, is not affected by the *dictum* in *Atwater* v. *Delaware, Lackawanna and Western Railroad,* 19 *Vroom* 55, to the effect that a company is under no obligation to establish commutation rates for a particular locality. That case was decided before the enactment of the statute upon which this order is based. Wyman, in his work on *Public Service Corporations,* says that "at common law the public servant dealt with the individual; except under a statute a community as such cannot complain of discrimination against its inhabitants." Section 1371. But the Public Utility law of 1911 (section 18 *d*) expressly forbids the giving, directly or indirectly, of any undue or unreasonable preference or advantage to any locality in any respect whatsoever, or the subjection of any locality to any prejudice or disadvantage in any respect whatsoever.

There is no merit in the contention that the order under review involves an interference with, or imposes a burden upon, interstate commerce.

It relates to intrastate transportation solely. Under it, contracts issued for such transportation will be in accordance with the fact. When complied with an ascertainment of the total revenue derived from intrastate transportation will be rendered possible. Under the system which the order is designed to correct, revenue from interstate commerce and that which is in fact and substance intrastate commerce are intermingled. The importance of a means of identifying the revenues flowing from these two distinct sources, in passing upon the justice and reasonableness of rates for intrastate transportation, and otherwise administering the Public Utility law, must be apparent.

The order under review will be affirmed, with costs.